MATHEWS, Defendant in Error, v. LECOMPTE, Plaintiff in Error.

1. Objections to the admission of testimony should be specific, not general.
2. Where a plaintiff in ejectment shows that whatever title the defendant may have had has passed by mesne conveyances to himself, it is not competent for the defendant to set up an outstanding title in a third person.
3. Fraud in the consideration of a promissory note secured by a deed of trust, will not affect the title of one who purchases *bona fide* at a sale by the trustee under the deed of trust.

*Error to St. Louis Land Court.*

*Morehead*, for plaintiff in error.
*Gibson*, for defendant in error.

RYLAND, Judge, delivered the opinion of the court.

This is a suit in the nature of an action in ejectment for a lot of ground south of Mound street, in block No. 248 in the city of St. Louis. The plaintiff shows his title thus : Thomas J. White, being the owner as is alleged in fee, sold the lot in controversy with another lot or lots to John Arthur ; and White and his wife, Jane White, made a deed with general warranty to said Arthur for the lots, on the first of June, 1840, for and in consideration of the sum of six thousand dollars, eight hundred of which were paid down ; and Arthur executed his three several notes for the balance of the sum, of seventeen hundred and thirty-three dollars and thirty-three and one-third cents each, dated June 1st, 1840, and due in one, two and three years respectively from date. This deed was properly acknow-

ledged and recorded. The acknowledgment was dated July 23d, and the deed filed for record the 24th, and recorded July 25th, 1840, in recorder's office in St. Louis county. To secure the payment of the balance of the consideration money provided for by the three notes as before stated, Arthur and his wife Rebecca executed a deed of trust, dated the same day of White's deed to Arthur, namely June 1st, 1840, conveying the lots aforesaid to James B. Bowlin, in trust, in order to secure the payment of said notes to White. This deed of trust, signed by Arthur and wife, and also by said James B. Bowlin, was acknowledged and recorded on the 26th day of August, 1840. These deeds were read in evidence by the plaintiff, who also gave in evidence a deed made and executed by James B. Bowlin, the trustee, conveying the lot in question to the plaintiff, Mathews ; the sale was had in order to pay off the balance of six or seven hundred dollars due and unpaid on the last note ; the sale was made on the 27th May, 1854. White had transferred the note, not by endorsement on the note, but by a written assignment on a separate piece of paper, as collateral security for a debt due by him to Catherine Sutton, and it was to pay this debt to Sutton that the trustee sold the lot in controversy. The defendant objected to this deed from Bowlin to Mathews, the plaintiff, being read in evidence ; his objection was overruled, and the deed was read. The defendant's objection not stating for what cause, or on what grounds it was made— it simply being a general objection without any specific reason or cause—was properly disregarded by the court below, and no error can be based on such ruling. The deed must therefore be considered as read without objection. Plaintiff then called a witness—Mr. John Riggin—who stated that the defendant Lecompte and her tenants were in possession of the lot when suit was brought and before. The witness demanded the possession from her for the plaintiff, which she refused to give. This witness being cross-examined, stated that he was present at the sale of the lot on the 27th May, 1854 ; said he cried off the lot. It was bid off to plaintiff ; he believed the plaintiff paid

the money to the trustee ; there were eight or ten persons at the sale ; said he was also present at the sale by Mr. Mauro, trustee, on the 6th day of February, 1854 ; said he was the auctioneer and cried it off. Here the plaintiff stopped.

The defendant then called Trusten Polk, who stated he was present at the sale on the 27th of May, 1854 ; he had Arthur's note then in his possession ; he was the attorney for Mrs. Sutton ; he directed the sale, wrote the advertisement, and had it published in the " Pilot," a weekly paper. Witness stated that several years ago this note, accompanying a debt on Dr. White, was put into his hands for collection by Catherine Sutton, through her brother, James C. Sutton. There was no assignment on the note. There was a separate paper accompanying the note purporting to transfer the note as collateral security for the debt of said White. This was dated September 30th, 1840. These papers lay in the witness' hands a long time without doing any thing with them ; he says he was delayed, he thinks, on account of the application of Dr. White for the benefit of the bankrupt law ; a short time before the aforesaid sale he came across these papers and concluded there was nothing to prevent her from collecting her debt, and advised a sale under the deed of trust. The note spoken of was the same note referred to in the advertisement ; there was a credit on it. The property was cried off by Mr. John Riggin, an auctioneer. Witness received the proceeds of sale and paid it to Mrs. Sutton. Witness said he represented Judge Bowlin at the sale. White left St. Louis for California about the spring of 1849.

Defendant proved her occupancy of the house and lot since the spring of 1841. Defendant proved that Dr. White was in possession and occupancy of the house and lot in dispute in 1841, and delivered the possession of it to Mrs. Lecompte, the defendant, who has kept it ever since. The house and lot are situated on south side of Mound street, about the center between Broadway and Second streets, and eastwardly from the Big Mound. Arthur then occupied the house and lot next west

of Mrs. Lecompte's house. About that time, that is, in 1841, Dr. White called on Mr. Arthur at the house occupied by him and demanded possession of the house and lot from Arthur. White did not then get possession. The defendant then read in evidence a deed from Thomas J. White and wife to Marie P. Leduc, trustee of the defendant in this suit, Mad. Cecile Lecompte, dated 26th April, 1841, for and in consideration of $4000, conveying the lot and premises in controversy to Leduc as trustee, with general warranty. This deed was acknowledged on 23d April, 1841, and filed for record 26th April, and recorded 3d May, 1841. The defendant then offered to read a deed from White and wife to defendant's trustee for an adjoining lot, which was objected to and excluded; also offered to read a deed from John F. Darby to Thomas J. White, which was objected to and excluded. Defendant then offered to show an outstanding title, and in support thereof offered to read in evidence from the second volume of State Papers, Crt. No. 671, a confirmation to Pierre Chouteau, sr., and a survey of the United States to Chouteau—survey No. 671—both of which documents were, on objection, excluded by the court, and defendant excepted, and also excepted to the exclusion of White's deed for an adjoining lot and to the exclusion of Darby's deed. The plaintiff then read a deed from defendant to Nathaniel Holmes, as trustee for defendant's children, for the same lot, which had been conveyed by White to Leduc as trustee for the defendant. This deed was dated 19th August, 1845, acknowledged on the 20th of August, and was recorded. The plaintiff then read a deed from Nathaniel Holmes as trustee of Mrs. Lecompte's children, also signed and executed by her children, Reine Lecompte, Charles Lecompte, Catharine Elerdean and Eliza Byron, for the same lot, to the defendant, dated 13th September, 1852, properly acknowledged and recorded; also read a deed from the defendant, Cecile Lecompte, to Charles G. Mauro as trustee, with general warranty, for the same lot of ground now in controversy in order to secure the payment of a debt to Vanvolzah; this deed was dated 13th day of Sep-

tember, 1852. This deed to Mauro was duly acknowledged and recorded. He then read a deed from Mauro (the trustee to secure the debt to Vanvolzah,) dated the 6th of February, 1854, by which said deed the said Mauro conveys the lot and premises in dispute to the plaintiff Mathews. All which last mentioned deeds were objected to as evidence by the defendant; but the objections were overruled, and the deeds were admitted in evidence. The defendant then read a deed from herself to Nathaniel Holmes and John R. Shepley, trustees, in order to secure the payment of a debt which she acknowledged to owe to J. M. Eager and B. A. Hill, conveying the above mentioned lot and premises in controversy to them, the said Holmes and Shepley, for the purposes and trust mentioned therein. This deed bears date 18th August, 1845; was properly acknowledged and recorded.

This is the substance of the evidence given and preserved in this case. The court gave the following instructions for the plaintiff: " 1. If the jury believe from the evidence that Thos. J. White and wife executed the deed to John Arthur, given in evidence by plaintiff, and that said Arthur and wife executed the deed of trust to James B. Bowlin, also given in evidence by plaintiff, and that said James B. Bowlin executed the deed to plaintiff, also given in evidence by plaintiff, they will find for the plaintiff, and will in that event assess, as the damages sustained by plaintiff, the value of the use of said premises from five years before the commencement of the suit down to the present time, and will also find the present monthly value of said premises. 2. The above instruction is given without reference to the question of limitation as made in the defendant's answer. In regard to limitation, if the jury find from the evidence that the defendant Cecile Lecompte has had the quiet possession of the land in question, holding the same as owner for twenty years next before the commencement of this suit, then they ought to find for the defendant."

The defendant excepted to these instructions. The jury found in favor of plaintiff, and judgment was rendered for

plaintiff for the lot first described in his petition. The defendant moved for a new trial, which being overruled, she sued out her writ of error, and brings the case here.

In looking over the proceedings as preserved by the bill of exceptions, there can not arise a doubt as to the fact that the defendant has showed no title to the land in dispute. She claims under White and so does the plaintiff. In 1840 White sold the lot to Arthur and conveyed it by general warranty deed ; at the same time, to secure the balance of the consideration unpaid, Arthur conveyed the lot to Bowlin. These deeds, duly acknowledged and recorded, were evidence to the world of the facts set forth therein. Now without ever showing any title afterwards in White, or ever showing a rescission of the contract between White and Arthur, and any release of the title from Bowlin, or reconveyance by Bowlin of the lot to White or Arthur, the defendant sets up a deed from White to Marie P. Leduc as her trustee, dated in 1841, (the previous sale still in full force,) for the very same land and premises which White had the year before sold to Arthur. The defendant may indeed have been the victim of a gross fraud practiced on her by White, but that can not help her out against White's previous grantee, with his deed properly acknowledged and recorded. But suppose, for the sake of argument, we admit that by White's deed to Leduc, as her trustee, and by her deed to Holmes as trustee for her children, and by the subsequent deed of Holmes and her children to her, she acquired title to the lot in controversy, how then stands the case? She still shows, as regards this plaintiff, no title ; for, after Holmes, and her children's deed to her, she again sold and conveyed, with covenants of warranty, all her estate in the lot to Charles G. Mauro, in trust to secure the payment of a debt to Vanvolzah, and Mauro afterwards, in pursuance of the said deed of trust, sold the lot to pay Vanvolzah's debt, and the plaintiff Mathews became the purchaser. The defendant therefore, in no view of this case, as preserved by the bill of exceptions, has any right or title to the lot. Indeed the first view taken settles the case beyond any

dispute, and the instruction first given put the case to the jury fairly on this view—that is, that the defendant acquired no title to the lot from White, because White had no title at the time he made his deed to Leduc. Then as to the statute of limitations, it has nothing to do with the case. The defendant never pretended that she had occupied the lot for twenty years herself before suit brought, but she wished to track her occupancy to White's and to those under whom White derived title, and thus make up the requisite time. But this can not be; because White had parted with all his title by deed, duly recorded, to Arthur, before the defendant purchased of White. Arthur steps in between White and Mrs. Lecompte and cuts off the chain of occupancy. She can not shove Arthur out and link her possession to White's.

The plaintiff showed title from White down to himself. He showed that as defendant made no other source of title to herself but from White, and he having none at the time she purchased, she consequently could derive none from him. Now what right had the defendant to show an outstanding title in a third party against a plaintiff who had and claimed to have title by deed of general warranty from defendant to her trustee, Mauro, and from Mauro to plaintiff, and both claiming under a common source? Was not their title thus derived to plaintiff from defendant sufficient to stop her from setting up an outstanding title? The plaintiff shows that by his evidence he had all the right of defendant; that he held under Mauro, the trustee, to whom she had conveyed by general warranty deed the premises in dispute. Now although it is in general competent for a defendant in ejectment to show title out of the plaintiff and in a third person, yet we think such will not be permitted to a defendant from whom plaintiff shows that he claims by a general warranty deed.

The objections taken to the sale and proceedings by Bowlin, the trustee, are unavailing in this action. The alleged fraud in the Vanvolzah debt can not affect the purchaser at the trustee's sale.

Upon the whole record, we can not see that any error has been committed by the court below against the defendant. The judgment must therefore be affirmed; Judge Scott concurring; Judge Leonard absent.